ABDIEL T. LEWIS (Cal. Bar No. 339339)
EVAN ROSE (Cal. Bar No. 253478)
Federal Trade Commission
Western Region San Francisco
90 7th St., Suite 14-300
San Francisco, CA 94103
alewis4@ftc.gov, erose@ftc.gov
Tel.: (415) 848-5100; Fax: (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>PRECISION PATIENT OUTCOMES, INC.,<br>　　a corporation; and<br><br>MARGRETT PRIEST LEWIS,<br>　　individually and as CEO of Precision<br>　　Patient Outcomes, Inc.,<br><br>　　Defendants. | Case No. 3:22-cv-7307-VC<br><br>**INITIAL JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Case Management Conference<br>Date:　　　February 15, 2023<br>Time:　　　1:00 p.m.<br>Location:　Zoom Webinar |

　　Plaintiff, the Federal Trade Commission ("Plaintiff" or "FTC"), and Defendants, Precision Patient Outcomes, Inc. and Margrett Priest Lewis ("Defendants"), jointly submit this Initial Joint Case Management Statement and Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California dated October 20, 2022, and Civil Local Rule 16-9.

　　**1.　　Jurisdiction and Service**

　　Defendants waived service of the Complaint. No issues or objections exist with regard to venue or personal jurisdiction. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

**2.     Facts**

Plaintiff's Position: Defendants have developed, labeled, advertised, marketed, distributed, or sold a dietary supplement under the names COVID Resist and VIRUS Resist. Defendants have explicitly or implicitly claimed that the supplement—which consists of nothing more than vitamins, zinc, and a flavonoid—can treat, prevent, or mitigate COVID-19. For example, on one of their websites, Defendants claimed that their product "boost[s] the effectiveness of your body's natural defenses against the virus and aid[s] the protection provided by the vaccine." (Dkt. #1 ¶ 39). Defendants lacked adequate substantiation for these health claims.

Defendants further claimed that there is scientific evidence to support their health claims. Defendants, however, misrepresented the conclusions and limitations of the scientific studies they cited. For example, on one of their websites, they claimed, "A Medical Protocol Published in 2020 By The Eastern Virginia Medical School, Showed That A Powerful Cocktail Of Over The Counter Vitamins Could Significantly Reduce The Mortality And Severity Of Illness From COVID-19. Our Formula Follows The Same Recipe That This Protocol Dictates." (Dkt. #1 ¶ 39). A clear disclaimer on the protocol cited by Defendants states that it is intended solely for educational purposes regarding potentially beneficial therapies for COVID-19, and that its scientific conclusions have not been adopted as medical consensus.

On May 5, 2021, Defendants sent a letter to the FTC requesting review of their health claims related to the supplement, which at the time was advertised as COVID Resist. On May 18, 2021, the FTC responded to Defendants, explaining that the Commission does not pre-review advertising materials to opine on their compliance with the FTC Act or any other applicable laws, and that it is the advertiser's sole responsibility to ensure compliance with truth-in-advertising laws. The response letter further provided Defendants notice of the COVID-19 Act and enforcement action taken by the Commission for similar claims to those made by Defendants, and directed Defendants to several publicly available resources to help marketers stay in compliance with the FTC Act.

Instead of halting their misconduct, Defendants' sole remedial action after receipt of the FTC's response letter was changing the name of the dietary supplement from COVID Resist to VIRUS Resist. Defendants continued to make explicit and implicit claims that their product could treat, prevent, or mitigate COVID-19 on their website and social media pages, including Facebook, Instagram, and TikTok, until June 2022.

The COVID-19 Act was implemented by Congress to protect consumers during a pandemic that has affected millions. Truthful claims about COVID-19 treatments, cures, prevention, and mitigation are important to consumers and their purchasing decisions. Within the span of at least 13 months, Defendants' misrepresentations resulted in consumers purchasing thousands of dollars' worth of product, relying on claims such as "[a] dose of this formula a day keeps viruses away… and their variants." (Dkt. #1 ¶ 39).

The principal factual issues in dispute are: what advertising claims Defendants made concerning COVID Resist/VIRUS Resist; and whether Defendants possessed adequate substantiation for their advertising claims.

Defendants' Position:

Defendants PPO and Margrett Lewis never sold any product called COVID Resist. They were in the planning stages of marketing and selling that product but upon sending a letter to the FTC, which described the product and the plan, and receiving an unintelligible response Defendants' plan was abandoned along with the trademark.  The Defendants then, voluntarily and at great expense, changed the products' name to VIRUS Resist and marketed it separately and differently than COVID Resist.  All statements made about the product were truthful, within the accepted limits of commercial speech, protected by the First Amendment, and/or not material to any purchase.  The Defendants did not claim that VIRUS Resist treated Covid-19 or any other virus and the FTC's claims otherwise are false.  The claims for the product are that it aids the body's own ability to resist viruses, and that the contents of VIRUS Resist are believed, by generally known science, to provide the body with substances it needs to do so, like Vitamin C. VIRUS Resist is designed to provide these substances in a uniform and high-quality manner.  In

any event, nothing in the marketing or any statement made by Defendants was material to any person purchasing VIRUS Resist to "cure, treat or mitigate" any virus they had contracted.

**3.    Legal Issues**

Plaintiff's Position: Legal issues include whether Defendants' conduct, described in Section 2 above, was deceptive in violation of Section 5 of the FTC Act, 15 U.S.C. § 45; whether Defendants disseminated false advertisements for the purposes of inducing, or which are likely to induce, the purchase of food or drug in violation of Section 12 of the FTC Act, 15 U.S.C. § 52; whether Defendant Lewis is individually liable for the alleged misconduct; whether Plaintiff has established a basis for permanent injunctive relief; and whether the Court should order monetary civil penalties from Defendants for violations of Section 5(a) of the FTC Act pursuant to the COVID-19 Act.

Defendants' conduct was deceptive because (1) they represented that COVID Resist/VIRUS Resist can treat, prevent, or mitigate COVID-19 but lacked adequate substantiation for these claims, and (2) they falsely claimed that the product was scientifically proven to protect consumers against the coronavirus. A permanent injunction is necessary to prevent Defendants from future dissemination of misleading COVID-19 health claims. Defendant Lewis is individually liable for the violations, because she had authority to control or participated in the alleged misconduct. Defendants' violations of Sections 5 of the FTC Act trigger civil penalties pursuant to the COVID-19 Act because the acts and practices were associated with the treatment, cure, prevention, or mitigation of COVID-19.

Defendants' Position:

The FTC is without constitutional power to bring this action and so it is improperly before the Court.  All statements made by the Defendants were consonant with the Dietary Supplement Health & Education Act of 1994 ("DSHEA") which governs the sale of dietary supplements and is administered by the Food and Drug Administration ("FDA") not the FTC and such compliance makes the FTC's action here unlawful.  In any event the statements made were not deceptive.  The Plaintiffs must plead fraud with particularity, including the number of violations, the violative statements, and when those violative actions occurred.  No injunction

can issue as the FTC has not plead a likelihood of future violation and the conduct alleged ceased at least five months before the FTC's complaint was filed.

The FTC's "substantiation" theory is an illegitimate attempt to shift the burden of proof for its claims to Defendants and vitiates DSHEA in the process.  FTC must be held to its proofs to show falsity and materiality in all respects.  The FTC's request for an injunction also fails because it has failed to act with clean hands and failed to mitigate any injury.

**4.     Motions**

The parties anticipate filing cross motions for summary judgment at the close of discovery, as well as motions in limine should the case proceed to trial.  The Defendants have filed a motion to dismiss.  Based on the initial disclosures provided by FTC, Defendants anticipate filing, as soon as practicable, a motion to suppress an undercover phone call to Defendants by FTC.

**5.     Amendment of Pleadings**

The FTC filed an amended Complaint on January 12, 2023 (Dkt. #15). The parties propose April 17, 2023, as the deadline for amendment of pleadings.

**6.     Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.     Disclosures**

On January 25, 2023, the FTC provided Defendants with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and which consisted primarily of: (1) documents and information obtained by the FTC through its pre-complaint investigation, and the testimony of an FTC investigator; (2) documents, information, and testimony from Defendants; and (3) documents, information, and testimony from third-party retailers.

Defendants provided initial disclosures on February 8, 2023. As noted by Plaintiffs this case was preceded by investigation by the FTC in which many relevant documents were

produced and those documents, as well as persons with knowledge of the facts surrounding claims and defenses were disclosed.

**8.    Discovery**

*a.  Discovery taken to date*

No discovery has been taken to date in this litigation. But as noted, materials were exchanged in a pre-complaint investigation process by the FTC.

*b.  Scope of discovery*

Plaintiff may need to propound discovery on the following subjects: Defendants' practices relating to the dietary supplement, COVID Resist/VIRUS Resist, including labeling, advertising, marketing, distribution, sales, and substantiation for the efficacy of the product; Defendant Lewis' individual role in the practices; and the extent of consumer injury. In connection with determining the appropriateness and terms of any permanent injunction that Plaintiff may seek, Plaintiff also may propound discovery related to the seriousness, deliberateness, and transferability of Defendants' acts and practices and the likelihood of future violations. In addition, to aid in calculating an appropriate civil penalty figure, Plaintiff intends to conduct discovery related to the statutory factors enumerated in Section 5(m)(1)(C) of the FTC Act, 15 U.S.C. § 45(m)(1)(C), including: Defendants' degree of culpability, the history of Defendants' prior conduct, Defendants' ability to pay, the effect on Defendants' ability to continue to do business, and such other matters as justice may require. Plaintiff reserves the right to expand the scope of discovery should the need arise.

Defendants anticipate propounding discovery regarding the FTC's investigation of this matter as well as all basis for jurisdiction in this matter and its contacts with other agencies including, but not limited to, the Justice Department and the FDA regarding it or similar matters. Defendants also anticipate that expert discovery may be necessary.

The parties reserve their rights to object to the scope of discovery.

*c.  Proposed limitations or modifications to the discovery rules*

The parties do not propose any limitations or modifications to the discovery rules.

    d. *Report re: stipulated e-discovery order*

The parties discussed e-discovery and do not believe that a separate e-discovery order is necessary in this matter.

    e. *Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f)*

On January 11, 2023, the parties met and conferred on a discovery plan, and the contours of that plan are reflected in this joint statement. In addition, the parties would like to add the following provisions regarding the treatment of privileged materials and protected work product:

  (1) <u>Limitations on privilege logging</u>. Materials related to this litigation or the FTC's investigation of Defendants that are exchanged solely among defense counsel, Defendants, and defense counsel's staff, or solely among FTC and DOJ staff, and not including any additional persons, are not required to be included on a privilege log, provided that the party withholding production of such documents believes in good faith that the documents are protected by an applicable privilege, including the attorney-client privilege, the work product doctrine, or any governmental privilege. The same applies to materials exchanged solely between Defendants' counsel and Defendants.

  (2) <u>Limitations on waiver</u>. Pursuant to Fed. R. Evid. 502(d), the parties request that the Court order that privilege or protection is not waived by disclosure connected with the litigation pending before the court.

    f. *Discovery disputes*

The parties have not identified any anticipated discovery disputes to date.

**9. Class Actions**

Not applicable.

**10. Related Cases**

Not applicable.

**11. Relief**

Plaintiff seeks a permanent injunction to prevent future violations of the FTC Act and the COVID-19 Act by Defendants. It also seeks monetary civil penalties from Defendants for each violation of Section 5 of the FTC Act pursuant to the COVID-19 Act, or alternatively for each

day of a continuing violation, and any additional relief the Court determines to be just and proper.

### 12. Settlement and ADR

The parties engaged in limited pre-complaint settlement negotiations. After discussing ADR, the parties have agreed to request a mediation with a magistrate judge, and have filed a stipulation requesting an early settlement conference with a magistrate judge to be held by the end of March 2023 (Dkt. #18). The Court granted the parties' stipulation on February 1, 2023. (Dkt. #20).

### 13. Other References

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 14. Narrowing of Issues

The parties may enter into stipulations regarding undisputed facts, the authenticity of documents, and other matters. As noted, the motion to dismiss or cross-motions for summary judgment may narrow issues between the parties.

### 15. Expedited Trial Procedure

The parties do not believe this case should be handled under Expedited Trial Procedure of General Order No. 64, Attachment A.

### 16. Scheduling

Below are the parties' respective proposed schedules (*proposed dates in italics*).

| Deadline/Event | Plaintiff | Defendants |
|---|---|---|
| Last day to meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan [Dkt. #5] | January 27, 2023 | |
| Last day to file ADR Certification signed by Parties and Counsel [Dkt. #5] | January 27, 2023 | |
| Response due [pursuant to stipulation] | February 3, 2023 | |
| Case Management Statement due [Dkt. #12] | February 8, 2023 | |

INITIAL JOINT CMC & [PROPOSED] ORDER                                                                 8
CASE NO. 3:22-cv-7307-VC

| Deadline to specify court appearances for Case Management Conference [Dkt. #12] | February 9, 2023, at 10:00 a.m. | |
|---|---|---|
| Case Management Conference (videoconference) [Dkt. #12] | February 15, 2023, at 1:00 p.m. | |
| Pleading amendment deadline | *April 17, 2023* | |
| Initial Expert Reports due | *June 9, 2023* | *June 30, 2023* |
| Discovery cut-off | *August 11, 2023* | *September 1, 2023* |
| Hearing on Motion for Summary Judgment | *September 28, 2023* | *November 3, 2023* |
| Pre-trial Conference | *Late November 2023* | *Mid-December 2023* |
| Trial | *Early December 2023* | *Mid-January 2024* |

**17.   Trial**

Defendants will request a jury trial. The parties estimate that the trial will last a total of three to five days.

**18.   Disclosure of Non-party Interested Entities or Persons**

Plaintiff's Position: Civ. L.R. 3-15 does not apply to Plaintiff, as it is a government agency.

Defendants' Position: Defendants are unaware of any non-party interested in this matter.

**19.   Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   Other Matters that May Facilitate the Just, Speedy, and Inexpensive Disposition of this Matter**

None at this time.

**FOR PLAINTIFF:**

*/s/* Abdiel T. Lewis                       Date:  February 8, 2023
ABDIEL T. LEWIS
EVAN ROSE
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

  Pursuant to Civ. L.R. 5-1(i)(3), the filer attests that concurrence in the filing of the document has been obtained from the other signatory.

**FOR DEFENDANTS:**

/s/ John J. Vecchione                       Date:  February 8, 2023
JOHN VECCHIONE (appearance *pro hac vice* pending)
KARA ROLLINS (appearance *pro hac vice* pending)
Attorneys for Defendants
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
Telephone: (202) 918-6902
Email: john.vecchione@ncla.legal
   kara.rollins@ncla.legal


Fredrick A. Hagen (Cal. Bar No. 196220)
Berding & Weil LLP
2175 N. California Blvd., Suite 500
Walnut Creek, CA 94596
fhagen@berdingweil.com
Tel: (925) 963-6796

**CASE MANAGEMENT ORDER**

The above INITIAL JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: _____      _____
Hon. Vince Chhabria
United States District Judge
Northern District of California