UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>   v.<br><br>PRECISION PATIENT OUTCOMES, INC., et al.,<br><br>   Defendants. | Case No. 22-cv-07307-VC<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

The motion to dismiss is denied. This ruling assumes the reader is familiar with the facts and the arguments made by both parties.

1.  *FTC's Constitutional Authority*. The defendants argue that the FTC cannot constitutionally bring this action because FTC Commissioners are only removable for cause. That argument is clearly foreclosed by Supreme Court precedent. *Humphrey's Executor v. United States*, 295 U.S. 602, 632 (1935); *see also FTC v. Roomster*, No. 22-cv-7389-CM, 2023 U.S. Dist. LEXIS 17138, at *21–26 (S.D.N.Y. Feb. 1, 2023).

2.  *FTC's Authority Over Dietary Supplements*. The defendants next argue that the FTC does not have the authority to challenge the advertising of dietary supplements because the FDA has the exclusive power to regulate dietary supplements. The defendants cite to no authority suggesting that the FDA's regulation of dietary supplements is exclusive. And Congress has clearly given the FTC the power to bring these kinds of cases under the FTC Act. *See* 15 U.S.C. § 52(a)(1) (prohibiting the dissemination of false advertisements "for the purpose of inducing, or which [are] likely to induce . . . the purchase . . . of food [or] drugs").

The defendants nonetheless argue that the standard the FTC seeks to impose here conflicts with the standards imposed by the Dietary Supplement Health & Education Act of 1994 (DSHEA). Because DSHEA governs dietary supplements specifically, the defendants argue it should control over the more general language of the FTC Act. But the defendants have not identified any conflict between the FTC Act and DSHEA. The defendants appear to be under the impression that DSHEA imposes no requirements at all for dietary supplements, but that's clearly wrong. For instance, to make a "structure/function" claim—a statement that "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans" or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function"—a manufacturer must have "substantiation" that the statement is "truthful and not misleading." 21 U.S.C. § 343(r)(6); *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 809 (9th Cir. 2020) (discussing other requirements). And the FDA has interpreted this "substantiation" requirement in line with the standard that the FTC seeks to impose in this case. FDA, *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* (Jan. 2009).

Finally, even if the defendants identified some conflict between the FTC Act and DSHEA, they have not cited to anything suggesting that DSHEA was intended to displace the FTC Act. *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 121 (2014) (holding that the Food, Drug, and Cosmetic Act did not displace the Lanham Act).[1]

3.   *COVID Resist.* The defendants next argue that the FTC cannot maintain a deception claim based on the name "COVID Resist" because the vitamins were never sold under that name. Although the defendants initially intended to use "COVID Resist," they switched to "VIRUS Resist" after receiving a letter from the FTC. Relatedly, the defendants argue the complaint does not distinguish between COVID Resist and VIRUS Resist, and so it fails to plead

---

[1] In their reply, the defendants argue that the FTC violated the Small Business Regulatory Enforcement Fairness Act of 1996. Because that argument was raised for the first time in the reply, this ruling does not address it.

with the particularity required under Rule 9(b).

The FTC is seeking only civil penalties related to the COVID Resist product, not consumer redress, and so it does not need to show that COVID Resist was actually sold. *FTC v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2014 WL 644749, at *10 (N.D. Cal. Feb. 19, 2014); *FTC v. Figgie International, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993).[2]

Moreover, based on the allegations in the complaint, the defendants marketed the product under both names. For instance, the October 4, 2021 product page refers to the product as "VIRUS RESIST ™" at the top of the page, but the product description says, "Take COVID resist™ daily…" Dkt. No. 40-9 at *2. Based on those allegations (among others), it is certainly plausible to infer that consumers relied on both names. For the same reason, the complaint does not impermissibly blur the allegations related to the two products. It appears to be the defendants who have done the blurring.

The complaint's remaining allegations are also pled with sufficient particularity under Rule 9(b). *See, e.g.,* Compl. ¶¶ 8, 9, 38–41.

4.     *Injunctive Relief.* Finally, the defendants argue that the FTC cannot seek injunctive relief under Section 13(b) because they have stopped selling the VIRUS Resist product. The complaint plausibly alleges that the misconduct is "likely to recur," and so the FTC may seek injunctive relief. *FTC. v. Evans Products Co*., 775 F.2d 1084, 1088 (9th Cir. 1985); *FTC v. Elec. Payment Sols. of Am. Inc*., No. CV-17-02535-PHX-SMM, 2019 WL 4287298, at *10 (D. Ariz. Aug. 28, 2019).

**IT IS SO ORDERED.**

Dated: May 3, 2023

_____
VINCE CHHABRIA
United States District Judge

---

[2] The FTC is seeking consumer redress related to the VIRUS Resist product. The FTC's motion for leave to file a sur-reply clarifying this issue is granted.