FREDRICK A. HAGEN (Cal. Bar No. 196220)
Berding & Weil LLP
2175 N. California Blvd., Suite 500
Walnut Creek, CA 94596
fhagen@berdingweil.com
Tel: (925) 963-6796

JOHN J. VECCHIONE
KARA M. ROLLINS
NEW CIVIL LIBERTIES ALLIANCE
1225 19th St. NW, Suite 450
Washington, DC 20036
john.vecchione@ncla.legal, kara.rollins@ncla.legal
Tel: (202) 869-5210
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:22-cv-7307 |
| Plaintiff, | |
| vs. | **ANSWER TO FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, CIVIL PENALTY JUDGMENT AND OTHER RELIEF AND COUNTERCLAIM** |
| PRECISION PATIENT OUTCOMES, INC., a corporation; and | |
| MARGRETT PRIEST LEWIS, Individually and as CEO of Precision Patient Outcomes, Inc., | **JURY TRIAL DEMANDED** |
| Defendant(s). | |

Defendants Precision Patient Outcomes, Inc. ("PPO") and Margrett Priest Lewis (collectively "Defendants") respond to the First Amended Complaint for Permanent Injunction, Monetary Relief, Civil Penalty Judgment, and Other Relief (DE 15) ("FAC") with respect to their own actions and knowledge and/or upon information and belief. Defendants reserve the right to amend and/or supplement this Answer at a later stage of the proceedings as permitted by the Federal Rules of Civil Procedure. Neither COVID Resist nor VIRUS Resist is a current product of Defendants, and to the extent the FAC alleges otherwise, all such allegations are denied. A jury trial is demanded on all counts of the FAC and Counterclaims.

To the extent not expressly admitted, all allegations in the FAC are denied and as to each allegation[1]:

1. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

2. The allegations of this paragraph rest on a falsehood that COVID Resist and VIRUS Resist are the same "product." Defendants deny that falsehood and its premise and do so every time it is alleged in the FAC. Defendants deny that their activities in connection with COVID Resist amounted to any conduct reached by any statute under the purview of the Federal Trade Commission ("FTC"). Defendants admit PPO developed, labeled, marketed, distributed, offered for sale, and sold a dietary supplement under the name VIRUS Resist. Defendants further admit that the ingredients of VIRUS Resist were as described in this paragraph. The allegations of paragraph 2 are otherwise denied.

3. Defendants deny the allegations in paragraph 3 except they admit that there is scientific evidence to support Defendants concerning VIRUS Resist. Further, Defendants deny that it is their burden to show the truthfulness of any statement regarding VIRUS Resist but the Plaintiff's burden to prove falsity.

4. Defendants deny the allegations of paragraph 4.

5. The allegations of paragraph 5 are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

6. The allegations of paragraph 6 are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

7. The allegations of paragraph 7 are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

8. Defendants deny all allegations of paragraph 8 regarding COVID Resist. Defendants admit the first sentence of paragraph 8. Defendants have insufficient information to admit or deny the other allegations of paragraph 8.

---

[1] The headings of the FAC are legal statements to which no response is required and to the extent a response is required they are denied.

9. Defendants admit that Margrett Priest Lewis founded PPO and directs it. Defendants deny all allegations in regard to COVID Resist. Defendants admit Ms. Lewis controls PPO. Defendants admit Ms. Lewis resides in the district and has transacted business there. Defendants admit that Ms. Lewis has promoted VIRUS Resist through, among other things, social media. All other allegations are denied.

10. The allegations of paragraph 10 are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

11. Denied.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Defendants admit that the Commission sent Defendants a written response and that the quoted statements appear therein. All other allegations are denied.

17. Denied.

18. Denied.

19. Defendants admit the letter mentioned 400 letters the Commission had sent to marketers. All other allegations are denied.

20. Defendants admit the letter contains the cited words, otherwise denied and deny that the Commission's actions have any legal force.

21. Defendants admit that the letter contains the cited words. Defendants deny the other allegations.

22. Defendants admit that the letter contains those words. Otherwise denied.

23. Denied, except admit the name change occurred subsequent to the FTC's letter.

24. Admit that a new website was created to sell VIRUS Resist. Otherwise denied.

25. Denied.

26. Denied.

27. Deny all allegations regarding COVID Resist. Admit that VIRUS Resist was an ingestible capsule. Otherwise denied.

28. Admit VIRUS Resist contains the cited instruction. Otherwise denied.

29. Denied.

30. Admitted.

31. Admitted.

32. Denied except that a website with COVID Resist on it was created.

33. Denied, except that VIRUS Resist was advertised on Defendants' website.

34. Denied, except that Defendants removed COVID Resist from any website, and no sales of it were made.

35. Denied.

36. Admit that at some point Defendants directed traffic from the old site to the new site, otherwise denied.

37. Denied.

38. Admitted Ms. Lewis promoted VIRUS Resist on social media, otherwise denied.

39. Denied.

    A. Defendants admit the stated language appeared on the website, otherwise denied.

    B. Defendants admit the stated language appeared on the website, otherwise denied.

    C. Defendants admit the stated language appeared on the website, otherwise denied.

    D. Defendants admit the stated language appeared on the website, otherwise denied.

    E. Defendants admit the stated language appeared on the website, otherwise denied.

    F. Defendants admit the stated language appeared on the website, otherwise denied.

    G. Defendants admit the stated language appeared on the website, otherwise denied.

    H. Defendants admit the stated language appeared on the website, otherwise denied.

    I. Defendants admit the stated language appeared on the website, otherwise denied.

    J. Defendants admit the stated language appeared on the website, otherwise denied.

40. Denied.

41. Denied.

      A. Denied

      B. Denied.

      C. Denied.

      D. Denied.

42. Denied.

43. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

44. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

45. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

46. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

47. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

48. The allegations of this paragraph are legal conclusions to which no response is required. As of the filing of this Answer no health emergency is in effect. To the extent a response is necessary they are denied.

49. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

50. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

51. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

52. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

53. Denied.

54. Denied.

55. Denied.

56. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

57. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

58. Denied.

59. Denied.

60. Denied.

61. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

62. The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is necessary they are denied.

## PRAYER FOR RELIEF

The remainder of the FAC constitutes a prayer for relief for which an answer is not required. Defendants deny that they violated the statutes cited and deny that plaintiff is entitled to any relief. An entry of judgment of non-liability should be entered for Defendants.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any defense or issue that would otherwise rest on Plaintiff or as to any element of Plaintiff's claims, Defendants assert the following affirmative and other Defenses.

## FIRST DEFENSE

Plaintiff lacks statutory authority to assert the claims alleged in the FAC.

## SECOND DEFENSE

The action violates Defendants' due process rights under the Fifth Amendment of the U.S. Constitution because, *inter alia*, the FTC has failed to provide constitutionally adequate fair notice of what acts or practices the Covid-19 Consumer Protection Act, Section 1401, Division FF, of the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, or the FTC Act, 15 U.S.C. § 41, et seq., prohibits or requires as applied to the allegations in the FAC. The FTC

failed to use its authority under 15 U.S.C. § 57(a) to promulgate understandable regulations. Neither Act provides fair notice of what acts or practices it prohibits or requires; and the FTC's lack of standards of enforcement of said Acts' authorizes or encourages seriously discriminatory enforcement. The FTC failed to provide adequate notification of alleged violations of the FTC Act to defendants as required by 15 U.S.C. § 45(m)(1)(B).

### THIRD DEFENSE

The FAC and all Claims therein fail to state a claim upon which relief can be granted.

### FOURTH DEFENSE

The FTC is entitled to no relief because this is not a "proper case" within the meaning of Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), as no violation of Section 5 or other applicable violation occurred, was not clear, and is not likely to reoccur.

### FIFTH DEFENSE

The FTC is not entitled to injunctive relief as conduct occurred solely in the past and there is no danger of recurrence.

### SIXTH DEFENSE

The contemplated relief would not be in the public interest because it would, among other things, harm consumers.

### SEVENTH DEFENSE

The FTC cannot demonstrate any statement made was material to any purchase of any product, no COVIDResist was sold, or that any statement was likely to mislead a consumer.

### EIGHTH DEFENSE

The alleged statements and claims that form the basis of the FTC's claims are truthful Commercial Speech protected by the First Amendment of the U.S. Constitution; were not false, misleading or inaccurate; constituted statements of opinion; and/or were nonactionable puffery.

### NINTH DEFENSE

Plaintiff's claims are barred by laches, estoppel, waiver, and or other equitable principles or defenses.

**TENTH DEFENSE**

Neither Plaintiff nor any consumer has suffered any actual or likely injury, harm, or economic loss.

**ELEVENTH DEFENSE**

Defendants acted at all times with reasonable care and competence and/or in accordance with industry standards in the matters alleged in the FAC.

**TWELFTH DEFENSE**

This action is barred because it is contrary to the U.S. Constitution and so void because the FTC, as structured, violates the separation of powers required by the U.S. Constitution by, *inter alia*, combining investigative, prosecutorial, quasi-legislative, and adjudicative functions and powers into a single administrative body whose members are not removable at will by the President and are insulated from constitutional control.

**THIRTEENTH DEFENSE**

The FTC failed to provide Defendants, who qualify as small entities, with the requisite response to their inquiries as required by Section 213(a) of the Small Business Regulatory Enforcement Fairness Act of 1996 ("SBREFA"), Pub.L. 104–121, Title II, § 201 to 224, Mar. 29, 1996, 110 Stat. 857–862.

**FOURTEENTH DEFENSE**

The FTC was informed at all times by the Defendants of their proposed course of conduct, and the FTC is empowered to obtain injunctions for future behavior but did not do so and so failed to mitigate any damage it now alleges.

**FIFTEENTH DEFENSE**

The Commissioners' vote authorizing consultation with the Attorney General pursuant to 15 U.S.C. § 56(a)(1) and/or vote to bring this case was procedurally invalid because on information and belief Commissioner Noah Joshua Phillips resigned effective October 14, 2022, a full month before the complaint was filed and all the actions of the FTC to bring this action were unlawful. This invalid vote violated, *inter alia*, Defendants' right to due process of law under the Fifth Amendment of the U.S. Constitution.

**SIXTEENTH DEFENSE**

The FTC, as required by law, gave the Justice Department the right to review and then to bring this action which course of action was declined by the Justice Department. This constituted the considered judgment of the agency lawfully and constitutionally constituted to prosecute the laws of the United States, so the FTC's subsequent action is unlawful and violative of separation-of-powers principles.

**SEVENTEENTH DEFENSE**

The FTC cannot require double-blind human studies to make valid claims about a product under its substantiation claim because only FDA-approved drugs are required to be so tested, the FDA Act exempts dietary supplements from such a regimen, and the FTC has not made a valid regulation to that effect. Further, the FTC's assertion contradicts valid scientific principles recognized as reliable in this Court and throughout the scientific world. Under law structure and function claims are protected with only sufficient competent evidence.

**EIGHTEENTH DEFENSE**

The "guidance" documents of the FTC or the FDA are not law, and the FTC cannot rely on regulated parties' alleged failure to adhere to such guidance to form the basis of a violation, in whole or in part, under either the Covid-19 Consumer Protection Act or the FTC Act.

**[Remainder of page intentionally left blank.]**

## COUNTERCLAIMS OF DEFENDANTS AGAINST THE FTC

Counterclaimants Margrett Priest Lewis and Precision Patient Outcomes, Inc., by their attorneys, bring the following counterclaims against Counterclaim Defendant Federal Trade Commission ("FTC" or "Counterclaim Defendant.")

## NATURE OF THE ACTION

1. The Supreme Court has noted that challenges to the combination of prosecutorial and adjudicatory functions in a single agency, including the FTC, are "fundamental, even existential." *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. ___, 143 S.Ct. 890, 897 (2023). The challenge in *Axon*, as here, is that "in essence the agencies, as currently structured, are unconstitutional in much of their work." *Id.*

2. The FTC is run by a multi-member body, all of whom are not removable by the President except for cause. They have chosen to press cases on deception claims by litigation rather than regulation.

3. By law, the Justice Department, the chief law enforcement office of the United States, must assess whether it will bring an action of this sort before the FTC can. The Justice Department has chosen not to prosecute this case. That represents the judgment of the Executive.

4. This Court should declare the FTC's structure and procedures unconstitutional. It should enjoin the FTC from prosecuting this action and dismiss the case.

## THE PARTIES

5. Counterclaim Defendant FTC is an administrative agency of the United States Government established, organized and existing pursuant to the FTC Act, 15 U.S.C. § 45, and is authorized by law, in certain circumstances to bring actions in federal court.

6. Counterclaim Plaintiff Precision Patient Outcomes, Inc. is a California company doing business in this district. It makes and markets, among other things, dietary supplements.

7. Margrett Priest Lewis is the founder and principal of PPO and resides in this district.

## JURISDICTION AND VENUE

8. This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this action pursuant to Article III of the Constitution and 28 U.S.C. § 1331.

9. Venue is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391(b), (c), and (e).

## FACTUAL BACKGROUND

10. Counterclaimants challenge the unconstitutional structure and processes of the FTC and the usurpation of the FDA and Justice Department's prerogatives as properly constituted agencies.

11. Counterclaim Defendants brought the instant action against Counterclaimants unlawfully and without Constitutional power to do so.

12. The Constitution sets out the three branches of government and vests each with a different power—legislative, executive, and judicial. *See* U.S. Const. art. I, § 1, art. II, § 1, cl. 1, art. III, § 1. Article II vests "[t]he executive Power" in the "President of the United States of America." § 1, cl. 1. To exercise that power, the Constitution directs the President to "take Care that the Laws be faithfully executed." *Id.* § 3.

13. Initiating a lawsuit is the essence of "tak[ing] Care that the Laws be faithfully executed," and that responsibility is entrusted to the President. *Buckley v. Valeo*, 424 U.S. 1, 138 (1976); *see also Cunningham v. Neagle*, 135 U.S. 1, 64 (1890) (that the laws be faithfully executed refers to the President's "enforcement of acts of [C]ongress"). "The entire 'executive Power' belongs to the President alone," and it includes the power to initiate lawsuits. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020).

14. The President cannot fulfill his role of "faithfully" initiating lawsuits without assistance. He must "select those who [are] to act for him under his direction in the execution of the laws." *Myers v. U.S.*, 272 U.S. 52, 117 (1926); *Cunningham*, 135 U.S. at 63-64. The President's selection of administrative officers is essential to his execution of the laws. *Myers*, 272 U.S. at 117.

15. Equally essential is his power to remove those officers. *Id*. "[T]o hold otherwise would make it impossible for the President … to take care that the laws be faithfully executed." *Id.* at 164; *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [his] officers accountable—by removing them from office, if necessary.").

16. The FTC's initiation of this lawsuit—and the statutes authorizing it—unconstitutionally usurp the President's Article II powers because commencing civil litigation is an act of executive power. Lest there be any doubt that FTC exercises a truly executive, rather than "quasi-legislative" or "quasi-judicial" function, the Commission has taken legal stances directly contrary to those advanced by the Executive Branch. The Justice Department chose not to bring this action.

17. The Commissioners who authorized this action were not Article II executive officers accountable to the President. *See Humphrey's Ex'r v. U.S.*, 295 U.S. 602 (1935). Vesting FTC with the power to bring enforcement actions while challenging presidential authority to "take Care that the Laws be faithfully executed," U.S. Const. art. II., § 3, contradicts the constitutional structure the Framers designed and set out in the Constitution's text, *see Free Enter. Fund*, 561 U.S. at 484 ("The President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them.").

18. Under Section 16(a)(1) of the FTC Act, FTC must notify DOJ in writing and "consult with the Attorney General" before filing actions like this. 15 U.S.C § 56(a)(1). The Commission can only commence an action in its own name, as it is doing here, if DOJ declines to bring the case itself. *Id.* § 56(a)(1)(B). In contrast to FTC Commissioners, the Attorney General is appointed and removable by the President, as well as a top Cabinet member. DOJ bills itself as "the world's largest law office," and it helps the President take care that the laws are faithfully executed. *Office of Attorney Recruitment & Management*, Dep't of Justice, https://www.justice.gov/oarm (last visited Jan. 31, 2023). Here, by declining to bring an action, it did so.

19. *Humphrey's Ex'r v. U.S.*, 295 U.S. 602 (1935) did not determine that the current FTC actions and powers are constitutional.

20. The Supreme Court did not doubt the Executive's Article II power to terminate executive officers' employment, which the Court characterized as "exclusive and illimitable." *Id.* at 627.

21. As the Supreme Court explained, "*Humphrey's Executor* reaffirmed the core holding of *Myers* that the President has 'unrestrictable power … to remove purely executive officers.'" *Seila Law*, 140 S. Ct. at 2199 (quoting *Humphrey's Ex'r*, 295 U.S. at 632).

22. In 1935 the FTC exercised "no part of the executive power vested by the Constitution in the President." *Humphrey's Ex'r*, 295 U.S. at 628.  To the contrary, the Court concluded that "[i]n administering the provisions of the statute in respect of 'unfair methods of competition,' … the commission acts in part quasi legislatively and in part quasi judicially," and that "[t]o the extent that it exercises any executive function, as distinguished from executive power in the constitutional sense, it does so … as an agency of the legislative or judicial departments of the government." *Id.*

23. But bringing and prosecuting this suit is ur-executive power.  This is dramatically the case because the Justice Department could have brought the same suit in the name of the United States.  The Justice Department has only executive power and is headed by a single officer appointed by the President and removable by him.

24. The Supreme Court's blessing of the FTC of yesteryear, with vastly different powers, does not imply an endorsement of the Commission's newer minted executive powers.  *See Consumers' Rsch. v. CPSC*, 592 F. Supp. 3d 568, 584 (E.D. Tex. 2022) ("[T]he Court must consider 'the set of powers the [Supreme] Court considered as the basis for its decision' in *Humphrey's Executor*, and 'not any latent powers that the agency may have had not alluded to by the Court.'") (quoting *Seila Law*, 140 S. Ct. at 2200 n.4), *appeal docketed*, No. 22-40328 (5th Cir. May 18, 2022).  That blessing "has not withstood the test of time." *Seila Law*, 140 S. Ct. at 2198 n.2.  Because FTC is now vested with core executive powers, any limit on the President's ability to remove Commissioners violates separation of powers.

25. Article II vests the executive power in the President, who must "take Care that the Laws be faithfully executed." *See, e.g.*, *Humphrey's Ex'r*, 295 U.S. at 627 (citing the "illimitable power of removal by the Chief Executive"); *Free Enter. Fund*, 561 U.S. at 492 (citing the Take Care Clause); *Seila Law*, 140 S. Ct. at 2197 (same). The President cannot effectively fulfill that duty when Congress restricts his removal power. *Myers*, 272 U.S. at 164 ("[T]o hold otherwise would make it impossible for the President, in case of political or other difference with the Senate or Congress, to take care that the laws be faithfully executed."); *Free Enter. Fund*, 561 U.S. at 492 (same); *Seila Law*, 140 S. Ct. at 2197 (same). Thus, an unrestricted removal power is "the general rule." *Seila Law*, 140 S. Ct. at 2198. The President cannot readily remove FTC Commissioners, so their decisions are unreviewable and incorrigible by him. *Cf. U.S. v. Arthrex*, 141 S. Ct. 1970, 1981 (2021).

26. Just as the President's ability to select administrative officers "is essential to the execution of the laws by him, so must be his power of removing" officers. *Myers*, 272 U.S. at 117. That removal power is important to the democratic legitimacy of the Executive Branch in at least two ways. First, it makes officers less likely to deviate from the President's (and hence, the People's) will. An officer who knows that disobedience can (and will) be met with removal is less likely to take an action at odds with the President's agenda. Second, and perhaps more importantly, the removal power gives the People political recourse if they are displeased with the actions taken by those who enforce federal law. Although the People cannot vote for (or against) an Executive officer directly, they can vote for (or against) the President, who bears ultimate responsibility for federal law enforcement. These are mechanisms of accountability vital to the Constitution.

27. FTC Commissioners, however, are shielded from at-will Presidential removal—and hence from the key mechanism of democratic accountability—in violation of Article II. The FTC is headed by five Commissioners, nominated by the President and confirmed by the Senate, each serving a 7-year term. 15 U.S.C. § 41. But once appointed, the Commissioners are not subject to removal by the President absent a finding of "inefficiency, neglect of duty, or malfeasance in office." *Id.* This means FTC Commissioners are not politically accountable for their actions.

28. The result is that crucial law enforcement actions, sometimes with massive consequences for the target of the action, are currently taken by individuals not elected by the People, and not controlled by the President. That runs directly contrary to Article II and the democratic principles underlying the Constitution.

29. In this case the violation of separation of powers, lack of political accountability, and lack of executive control over the FTC is compounded by the due process of law violation of so-called zombie votes. On information and belief, the Commissioners' vote authorizing consultation with the Attorney General pursuant to 15 U.S.C. § 56(a)(1) and/or their vote to bring this case was procedurally invalid because, on information and belief, Commissioner Noah Joshua Phillips resigned effective October 14, 2022, a full month before the complaint was filed, so all the actions of the FTC to bring this action were unlawful. This action violated, *inter alia*, Defendants' right to due process of law under the Fifth Amendment of the U.S. Constitution.

**Count I**

**Seeking Declaratory and Injunction Relief Against
Violation of PPO's and Margrett Lewis's Constitutional Rights**

30. Counterclaimants restate and incorporate by reference each and every allegation of the preceding paragraphs.

31. The FTC's actions separately violate Counterclaimants' rights because the agency's structure, on its face, is unconstitutional under Article II.  In particular, the "for cause" dismissal requirements and staggered terms of the Commissioners create distance from Executive, and therefore from democratic, control.  Because the agency's structure violates Article II, any actions taken against Counterclaimants under its present structure are invalid.

32. The vote authorizing the filing of this action was procedurally invalid in violation of Counterclaimants' right of due process under the law.  On information and belief, the Commission included the vote(s) of a former Commissioner after his resignation in its official count to proceed with this action.

33. The division of enforcement between the FTC and the Department of Justice regarding these claims is anything but transparent. It also violates separation of powers, as well as the

15

requirement that Congress provide an "intelligible principle" when delegating power to the agencies. No such "intelligible principle" governs which agency presses these claims.

34. The FTC's conduct has caused and will continue to cause Counterclaimants to suffer immediate and irreparable harm to their Constitutional rights. No money damages can remedy this harm, and Counterclaimants have no legal avenue by which to recover any money damages against the FTC. This action is not speculative. It is happening and ongoing.

35. According to *Humphrey's Executor*, the FTC has no executive power. Whether or not this holds true today (it does not), the FTC's conduct is unconstitutional. Indeed, under *Humphrey's*, the bringing of this action (an indisputable exertion of executive power) is unlawful. And assuming that *Humphrey's* was wrongly decided, the for-cause removal provisions and staggered terms of FTC commissioners are unlawful.

36. Neither for-cause removal nor staggered terms are severable from the FTC Act.

37. Therefore, the FTC's Action must be declared unlawful and only Congress can cure any statutory deficiency so the court must declare the FTC's Action unlawful.

38. These violations of Counterclaimants' Constitutional Rights entitle them to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and an injunction against the FTC proceeding against Counterclaimants.

**Count II**

**Violation of Non-Delegation of Legislative Powers**

39. Counterclaimants restate and incorporate by reference each and every allegation of the preceding paragraphs.

40. The enforcement of federal law regarding dietary supplements, such as those produced by Counterclaimants is currently split between the FTC, the FDA and the Justice Department.

41. The division of enforcement between the FTC and the Department of Justice regarding these claims, as well as the division of responsibility with the FDA, is not transparent and also violates the non-delegation doctrine.

42. In order that legislative power granted only to the Congress under Article I of the U.S. Constitution not be transferred to the Executive Branch, Congress is required to provide an

"intelligible principle" when delegating power to the agencies. No such "intelligible principle" governs which agency presses these claims.

43. The decision to bring such claims is not uniform between the agencies and produces arbitrary results.

44. These violations of Counterclaimants' Constitutional Rights entitle them to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and an injunction against the FTC proceeding against Counterclaimants.

## Count III

### Violation of Due Process

45. Counterclaimants restate and incorporate by reference each and every allegation of the preceding paragraphs.

46. Standing alone, the due process of law violation of so-called zombie votes prevents the FTC from prosecuting this suit.

47. On information and belief, the Commissioners' vote authorizing consultation with the Attorney General pursuant to 15 U.S.C. § 56(a)(1) and/or their vote to bring this case was procedurally invalid because, on information and belief, Commissioner Noah Joshua Phillips resigned effective October 14, 2022, a full month before the complaint was filed, thus rendering all actions of the FTC to bring this action unlawful.

48. This action violated, *inter alia*, Defendants' right to due process of law under the Fifth Amendment of the U.S. Constitution.

49. The violations of Counterclaimants' due process rights entitle them to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and an injunction against the FTC proceeding against Counterclaimant.

**PRAYER FOR RELIEF**

WHERFORE, Defendants and Counterclaimants respectfully request that the Court enter a judgment:

    A. Denying the FTC any relief on its claims.

17

  B. Dismissing the FTC's FAC in its entirety with prejudice.

  C. Declaring the FTC's structure unconstitutional.

  D. Awarding Counterclaimants the costs it has incurred defending the FTC's FAC and pressing its declaratory action, and

  E. Awarding such other relief to Counterclaimants as the Court deems Just and Proper.

May 17, 2023        Respectfully Submitted,

           /s/ John J. Vecchione
           John J. Vecchione
           Kara M. Rollins
           New Civil Liberties Alliance
           1225 19th St. NW, Suite 450
           Washington, DC 20036
           john.vecchione@ncla.legal, kara.rollins@ncla.legal
           Tel: (202) 869-5210

           /s/ Fredrick A. Hagen
           Fredrick A. Hagen (Cal. Bar No. 196220)
           Berding & Weil LLP
           2175 N. California Blvd., Suite 500
           Walnut Creek, CA 94596
           fhagen@berdingweil.com
           Tel: (925) 963-6796

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2023, I electronically filed the foregoing Answer to First Amended Complaint for Permanent Injunction, Monetary Relief, Civil Penalty Judgment and Other Relief and Counterclaim the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.


                    /s/ John J. Vecchione
                    John J. Vecchione