ABDIEL T. LEWIS (Cal. Bar No. 339339)
EVAN ROSE (Cal. Bar No. 253478)
MICHAEL A. NARANJO (Cal. Bar No. 221449)
Federal Trade Commission
Western Region San Francisco
90 7th St., Suite 14-300
San Francisco, CA 94103
alewis4@ftc.gov, erose@ftc.gov, mnaranjo@ftc.gov
Tel.: (415) 848-5100; Fax: (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>PRECISION PATIENT OUTCOMES, INC.,<br>        a corporation; and<br><br>MARGRETT PRIEST LEWIS,<br>        individually and as CEO of Precision<br>        Patient Outcomes, Inc.,<br><br>        Defendants. | Case No. 3:22-cv-7307-AMO<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT**<br><br>Case Management Conference<br>Date:        TBD<br>Time:        10:00 AM<br>Location:   San Francisco Courthouse,<br>                  Courtroom 10 – 19th Floor |

Plaintiff, the Federal Trade Commission ("Plaintiff" or "FTC"), and Defendants, Precision Patient Outcomes, Inc. and Margrett Priest Lewis ("Defendants"), jointly submit this Updated Joint Case Management Statement pursuant to the Court's order (Dkt. #44), the Standing Order for All Judges of the Northern District of California dated October 20, 2022, and Civil Local Rule 16-9.

1. **Jurisdiction and Service**

Defendants waived service of the Complaint. No issues or objections exist with regard to venue or personal jurisdiction. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

2. **Facts**

<u>Plaintiff's Position</u>: Defendants have developed, labeled, advertised, marketed, distributed, or sold a dietary supplement under the names COVID Resist and VIRUS Resist. Defendants have explicitly or implicitly claimed that the supplement—which consists of nothing more than vitamins, zinc, and a flavonoid—can treat, prevent, or mitigate COVID-19. For example, on one of their websites, Defendants claimed that their product "boost[s] the effectiveness of your body's natural defenses against the virus and aid[s] the protection provided by the vaccine." (Dkt. #1 ¶ 39). Defendants lacked adequate substantiation for these health claims.

Defendants further claimed that there is scientific evidence to support their health claims. Defendants, however, misrepresented the conclusions and limitations of the scientific studies they cited. For example, on one of their websites, they claimed, "A Medical Protocol Published in 2020 By The Eastern Virginia Medical School, Showed That A Powerful Cocktail Of Over The Counter Vitamins Could Significantly Reduce The Mortality And Severity Of Illness From COVID-19. Our Formula Follows The Same Recipe That This Protocol Dictates." (Dkt. #1 ¶ 39). A clear disclaimer on the protocol cited by Defendants states that it is intended solely for educational purposes regarding potentially beneficial therapies for COVID-19, and that its scientific conclusions have not been adopted as medical consensus.

On May 5, 2021, Defendants sent a letter to the FTC requesting review of their health claims related to the supplement, which at the time was advertised as COVID Resist. On May 18, 2021, the FTC responded to Defendants, explaining that the Commission does not pre-review advertising materials to opine on their compliance with the FTC Act or any other applicable laws, and that it is the advertiser's sole responsibility to ensure compliance with truth-in-advertising laws. The response letter further provided Defendants notice of the COVID-19 Act

1  and enforcement action taken by the Commission for similar claims to those made by
2  Defendants, and directed Defendants to several publicly available resources to help marketers
3  stay in compliance with the FTC Act.
4      Instead of halting their misconduct, Defendants' sole remedial action after receipt of the
5  FTC's response letter was changing the name of the dietary supplement from COVID Resist to
6  VIRUS Resist. Defendants continued to make explicit and implicit claims that their product
7  could treat, prevent, or mitigate COVID-19 on their website and social media pages, including
8  Facebook, Instagram, and TikTok, until June 2022.
9      The COVID-19 Act was implemented by Congress to protect consumers during a
10 pandemic that has affected millions. Truthful claims about COVID-19 treatments, cures,
11 prevention, and mitigation are important to consumers and their purchasing decisions. Within the
12 span of at least 13 months, Defendants' misrepresentations resulted in consumers purchasing
13 thousands of dollars' worth of product, relying on claims such as "[a] dose of this formula a day
14 keeps viruses away… and their variants." (Dkt. #1 ¶ 39).
15     The principal factual issues in dispute are: what advertising claims Defendants made
16 concerning COVID Resist/VIRUS Resist; and whether Defendants possessed adequate
17 substantiation for their advertising claims.
18     Defendants' Position:
19     Defendants PPO and Margrett Lewis never sold any product called COVID Resist.
20 They were in the planning stages of marketing and selling that product but upon sending a letter
21 to the FTC, which described the product and the plan, and receiving an unintelligible response
22 Defendants' plan was abandoned along with the trademark.  The Defendants then, voluntarily
23 and at great expense, changed the products' name to VIRUS Resist and marketed it separately
24 and differently than COVID Resist.  All statements made about the product were truthful, within
25 the accepted limits of commercial speech, protected by the First Amendment, and/or not material
26 to any purchase.  The Defendants did not claim that VIRUS Resist treated Covid-19 or any other
27 virus and the FTC's claims otherwise are false.  The claims for the product are that it aids the
28 body's own ability to resist viruses, and that the contents of VIRUS Resist are believed, by

generally known science, to provide the body with substances it needs to do so, like Vitamin C. VIRUS Resist is designed to provide these substances in a uniform and high-quality manner. In any event, nothing in the marketing or any statement made by Defendants was material to any person purchasing VIRUS Resist to "cure, treat or mitigate" any virus they had contracted. Disagreement with the FTC on the value of dietary supplements does not subject anyone to liability nor is it "deception."

### 3.     Legal Issues

<u>Plaintiff's Position</u>: Legal issues include whether Defendants' conduct, described in Section 2 above, was deceptive in violation of Section 5 of the FTC Act, 15 U.S.C. § 45; whether Defendants disseminated false advertisements for the purposes of inducing, or which are likely to induce, the purchase of food or drug in violation of Section 12 of the FTC Act, 15 U.S.C. § 52; whether Defendant Lewis is individually liable for the alleged misconduct; whether Plaintiff has established a basis for permanent injunctive relief; and whether the Court should order consumer refunds and monetary civil penalties from Defendants for violations of Section 5(a) of the FTC Act pursuant to the COVID-19 Act.

Defendants' conduct was deceptive because (1) they represented that COVID Resist/VIRUS Resist can treat, prevent, or mitigate COVID-19 but lacked adequate substantiation for these claims, and (2) they falsely claimed that the product was scientifically proven to protect consumers against the coronavirus. A permanent injunction is necessary to prevent Defendants from future dissemination of misleading COVID-19 health claims. Defendant Lewis is individually liable for the violations, because she had authority to control or participated in the alleged misconduct. Defendants' violations of Sections 5 of the FTC Act trigger consumer refunds and civil penalties pursuant to the COVID-19 Act because the acts and practices were associated with the treatment, cure, prevention, or mitigation of COVID-19.

<u>Defendants' Position:</u>

The FTC is without constitutional power to bring this action and so it is improperly before the Court.  All statements made by the Defendants were consonant with the Dietary Supplement Health & Education Act of 1994 ("DSHEA") which governs the sale of dietary

supplements and is administered by the Food and Drug Administration ("FDA") not the FTC and such compliance makes the FTC's action here unlawful. In any event the statements made were not deceptive. The Plaintiffs must plead fraud with particularity, including the number of violations, the violative statements, and when those violative actions occurred. No injunction can issue as the FTC has not plead a likelihood of future violation and the conduct alleged ceased at least five months before the FTC's complaint was filed. The Defendants have also taken affirmative steps to ensure they will comply with the FTC's view of the law and no injunction should issue.

The FTC's "substantiation" theory is an illegitimate attempt to shift the burden of proof for its claims to Defendants and vitiates DSHEA in the process. The FDA Act requires double blind controlled studies for the approval of prescription drugs. No such standard governs dietary supplements and there are other sources and standards of scientific proof allowable to support statements about products. The FTC also failed in its duty to provide a requisite response to a small business as required by SBREFA. The guidance documents of the FTC or the FDA are not law and failure to adhere to them is not a violation of law. The FTC must be held to its proofs to show falsity and materiality in all respects. The FTC's request for an injunction also fails because it has failed to act with clean hands and failed to mitigate any injury. The Defendants have plead 18 affirmative defenses and responded with three counterclaims against the FTC for violation of Constitutional rights.

**4.     Motions**

The Defendants filed a motion to dismiss on February 3, 2023 (Dkt. #21). Judge Chhabria rendered a decision denying Defendants' motion to dismiss on May 3, 2023 (Dkt. #43). On May 10, 2023, the parties received notice that the matter has been reassigned to Judge Martínez-Olguín (Dkt. #44). The Defendants filed an Answer on May 17, 2023 (Dkt. #47).

<u>Plaintiff's Position:</u> In response to Defendants' affirmative defenses outlined in their Answer, the FTC intends to file a motion to strike. The FTC anticipates filing a motion for summary judgment at the close of discovery, as well as motions in limine,

<u>Defendants' Position:</u> Defendants believe that a full seven-hour deposition of Defendant Margrett Lewis, followed by another full seven-hours of deposition as a 30(b)(6) witness as PPO's sole proprietor is excessive and may file a protective motion should the parties fail to reach agreement on the issue. In addition, Defendants believe that the scope of discovery demanded by Plaintiffs, particularly information about products that are not composed of the same or similar ingredients as COVID Resist and VIRUS Resist are excessive, burdensome and not likely to unearth relevant evidence. Should the parties fail to reach agreement, motion practice may be necessary.

Defendants anticipate filing motions for summary judgment at the close of discovery, as well as motions in limine, including a motion to suppress an undercover phone call to Defendants by FTC agent Manzo, should the case proceed to trial.

### 5. Amendment of Pleadings

The FTC filed an amended Complaint on January 12, 2023 (Dkt. #15). The parties are not proposing a modification of the April 17, 2023 deadline for amendment of pleadings.

### 6. Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### 7. Disclosures

On January 25, 2023, the FTC provided Defendants with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and which consisted primarily of: (1) documents and information obtained by the FTC through its pre-complaint investigation, and the testimony of an FTC investigator; (2) documents, information, and testimony from Defendants; and (3) documents, information, and testimony from third-party retailers.

Defendants provided initial disclosures on February 8, 2023. As noted by Plaintiffs this case was preceded by investigation by the FTC in which many relevant documents were

produced and those documents, as well as persons with knowledge of the facts surrounding claims and defenses were disclosed.

**8.     Discovery**

*a. Discovery taken to date*

The FTC served Defendants with its First Set of Requests for Production of Documents and Tangible Things on March 13, 2023, and served Defendants with its First Set of Requests for Admissions on May 11, 2023.

The FTC has also noticed Ms. Lewis's deposition to discuss her personal knowledge of and individual role in PPO's practices as well as other matters alleged in the First Amended Complaint. The FTC served Defendants with a Rule 30(b)(6) notice for Defendant PPO, and the parties have met and conferred as to the subject matters that will be addressed during the deposition. The FTC is meeting and conferring with Defendants' counsel to try to resolve Defendants' objections to the requests for production and 30(b)(6) notice. The FTC has also been working with Defendants' counsel to schedule dates for the depositions, but such scheduling will be dependent on the need for discovery motions.

Defendants have served FTC with their First Set of Requests for Production and Tangible Things on March 17, 2023.

*b. Scope of discovery*

Plaintiff's Position: In addition to the discovery that has been served, as well as expert discovery, Plaintiff may propound additional discovery on the following subjects: Defendants' practices relating to the dietary supplement, COVID Resist/VIRUS Resist, including labeling, advertising, marketing, distribution, sales, and substantiation for the efficacy of the product; Defendant Lewis's individual role in the practices; and the extent of consumer injury. In connection with determining the appropriateness and terms of any permanent injunction that Plaintiff may seek, Plaintiff also may propound discovery related to the seriousness, deliberateness, and transferability of Defendants' acts and practices and the likelihood of future violations. In addition, to aid in calculating an appropriate civil penalty figure, Plaintiff intends to conduct discovery related to the statutory factors enumerated in Section 5(m)(1)(C) of the

FTC Act, 15 U.S.C. § 45(m)(1)(C), including: Defendants' degree of culpability, the history of Defendants' prior conduct, Defendants' ability to pay, the effect on Defendants' ability to continue to do business, and such other matters as justice may require. Plaintiff reserves the right to expand the scope of discovery should the need arise as well as the right to object to the scope of discovery

Defendants' Position: Defendants anticipate propounding additional discovery regarding the FTC's investigation of this matter as well as all basis for jurisdiction in this matter and its contacts with other agencies including, but not limited to, the Justice Department and the FDA regarding it or similar matters. Defendants intend to serve FTC with interrogatories pursuant Fed. R. Civ. P. 33 and Requests for Admission in the coming weeks. They anticipate interrogatories, deposition notices, including a 30(b)(6) notice of the FTC and interrogatories in addition to Expert discovery. Defendants also anticipate that expert discovery may be necessary.

Defendants reserve their rights to object to the scope of discovery.

c. *Proposed limitations or modifications to the discovery rules*

Plaintiff's Position: The FTC does not propose any limitations or modifications to the discovery rules.

Defendants' Position: Defendants do not propose any limitations or modifications to the discovery rules except that Defendants may seek to limit the hours Ms. Lewis must testify.

d. *Report re: stipulated e-discovery order*

The parties discussed e-discovery and do not believe that a separate e-discovery order is necessary in this matter.

e. *Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f)*

On January 11, 2023, the parties met and conferred on a discovery plan, and the contours of that plan are reflected in this joint statement. As part of that plan, the parties added the following provisions regarding the treatment of privileged materials and protected work product:

(1) Limitations on privilege logging. Materials related to this litigation or the FTC's investigation of Defendants that are exchanged solely among defense counsel, Defendants, and defense counsel's staff, or solely among FTC and DOJ staff, and not including any additional

persons, are not required to be included on a privilege log, provided that the party withholding production of such documents believes in good faith that the documents are protected by an applicable privilege, including the attorney-client privilege, the work product doctrine, or any governmental privilege. The same applies to materials exchanged solely between Defendants' counsel and Defendants.

(2) <u>Limitations on waiver</u>. Pursuant to Fed. R. Evid. 502(d), the parties requested that the Court order that privilege or protection is not waived by disclosure connected with the litigation pending before the court.

   *f.*  *Discovery disputes*

Although the parties are continuing to meet and confer, the parties may bring disputes to Magistrate Judge Kim relating to Defendants' responses and objections to the FTC's requests for production and Rule 30(b)(6) deposition notice for Defendant PPO.

**9.     Class Actions**

Not applicable.

**10.    Related Cases**

Not applicable.

**11.    Relief**

Plaintiff seeks a permanent injunction to prevent future violations of the FTC Act and the COVID-19 Act by Defendants. It also seeks refunds for consumers and monetary civil penalties from Defendants for each violation of Section 5 of the FTC Act pursuant to the COVID-19 Act, or alternatively for each day of a continuing violation, and any additional relief the Court determines to be just and proper.

**12.    Settlement and ADR**

The parties engaged in limited pre-complaint settlement negotiations. The parties agreed to ADR with a magistrate judge, and filed a stipulation requesting an early settlement conference on January 27, 2023 (Dkt. #18). The Court granted the parties' stipulation on February 1, 2023. (Dkt. #20).  The parties engaged in two separate settlement conferences with Magistrate Judge Thomas S. Hixson, on April 12 and May 15, 2023, but the parties were not able to settle the case

1   The FTC remains willing to engage in settlement discussions with Defendants. Defendants are
2   also willing to engage in further settlement discussions with FTC and both parties have informed
3   the magistrate they will contact him should further intervention seem useful.

**13.   Other References**

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.   Narrowing of Issues**

The parties may enter into stipulations regarding undisputed facts, the authenticity of documents, and other matters. As noted, the motion to dismiss or motions for summary judgment may narrow issues between the parties.

**15.   Expedited Trial Procedure**

The parties do not believe this case should be handled under Expedited Trial Procedure of General Order No. 64, Attachment A.

**16.   Scheduling**

This matter was reassigned to Judge Martínez-Olguín on May 10, 2023, and the parties were ordered to file this Joint Case Management Statement by May 31, 2023. Under the current litigation schedule, opening expert reports are due to be exchanged prior to the close of fact discovery. The parties propose extending the deadlines no more than 90 days to ensure the efficient and orderly management of discovery in this matter. Below is the proposed amended schedule agreed upon by the parties.

| Deadline/Event | Current Date | Proposed Date |
|---|---|---|
| Opening Expert Reports | July 9, 2023 | August 18, 2023 |
| Rebuttal Expert Reports | July 30, 2023 | September 15, 2023 |
| Reply Expert Reports | N/A | October 6, 2023 |
| Close of Fact Discovery | August 11, 2023 | August 11, 2023 |
| Close of Expert Discovery | August 11, 2023 | October 20, 2023 |
| Last day for hearing on Dispositive Motions | October 5, 2023 | December 14, 2023 |

| Pre-trial Conference | January 9, 2024 | April 11, 2024 |
| Trial | January 22, 2024 | April 22, 2024 |

**17.   Trial**

Defendants have requested a jury trial. The parties estimate that the trial will last a total of three to five days.

**18.   Disclosure of Non-party Interested Entities or Persons**

<u>Plaintiff's Position</u>: Civ. L.R. 3-15 does not apply to Plaintiff, as it is a government agency.

<u>Defendants' Position</u>: Defendants are unaware of any non-party interested in this matter.

**19.   Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   Other Matters that May Facilitate the Just, Speedy, and Inexpensive Disposition of this Matter**

The parties jointly request for the Court to schedule a case management conference at its soonest convenience to discuss the case schedule and other matters the Court may deem necessary for the efficient disposition of this matter.

<u>Plaintiff's Position:</u> The FTC wishes to bring to the Court's attention information of which it has recently become aware. Raymond Manzo, who is an FTC investigator working on this matter, was disclosed on the FTC's Rule 26(a) initial disclosures as a potential witness at trial. Mr. Manzo participated in a lawfully conducted undercover call with Defendant Lewis, a copy of which was produced to Defendants in discovery. In Mr. Manzo's capacity as President of the San Francisco La Raza Lawyers Association ("SFLRLA"), he submitted on behalf of the SFLRLA a letter of recommendation in support of Judge Martínez-Olguín's nomination to the bench and spoke to the media on behalf of the SFLRLA regarding her nomination. In addition, as Regional President for the Hispanic National Bar Association ("HNBA"), he was on a committee that approved an HNBA letter of recommendation in support of Judge Martínez-Olguín's

nomination. Mr. Manzo also interviewed Judge Martínez-Olguín as part of her preparation for meeting with the HNBA.

In the interest of prompt and complete disclosure, the FTC notified counsel for Defendants of these facts via email on May 23, 2023 (Pacific Time). The FTC disputes Defendants' characterizations of the undercover call, the recording of Ms. Lewis's statements during that call, and the FTC staff involved in that call.

<u>Defendants' Position:</u> FTC informed Defendants of the above information on May 24. Defendants intended and still intend to depose Mr. Manzo who made false statements to Defendants under false pretenses and is a key witness for the Plaintiffs. Defendants are considering whether they will seek recusal or reassignment, and will inform the Court of the same as soon as practicable, but did not want to delay the filing of this Updated Joint Case Management Statement.

**FOR PLAINTIFF:**

/s/ Abdiel T. Lewis                              Date:  May 31, 2023
ABDIEL T. LEWIS
EVAN ROSE
MICHAEL A. NARANJO
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

   Pursuant to Civ. L.R. 5-1(i)(3), the filer attests that concurrence in the filing of the document has been obtained from the other signatory.

**FOR DEFENDANTS:**

/s/ John Vecchione                              Date:  May 31, 2023
JOHN VECCHIONE
KARA ROLLINS
CASEY NORMAN
Attorneys for Defendants
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
Telephone: (202) 918-6902
Email: john.vecchione@ncla.legal
   kara.rollins@ncla.legal
   casey.norman@ncla.legal


Fredrick A. Hagen (Cal. Bar No. 196220)
Berding & Weil LLP
2175 N. California Blvd., Suite 500
Walnut Creek, CA 94596
fhagen@berdingweil.com
Tel: (925) 963-6796