ABDIEL T. LEWIS (Cal. Bar No. 339339)
EVAN ROSE (Cal. Bar No. 253478)
MICHAEL A. NARANJO (Cal. Bar No. 221449)
Federal Trade Commission
Western Region San Francisco
90 7th St., Suite 14-300
San Francisco, CA 94103
alewis4@ftc.gov, erose@ftc.gov, mnaranjo@ftc.gov
Tel.: (415) 848-5100

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>        v.<br><br>PRECISION PATIENT OUTCOMES, INC.,<br>  a corporation; and<br><br>MARGRETT PRIEST LEWIS,<br>  individually and as CEO of Precision<br>  Patient Outcomes, Inc.,<br><br>  Defendants. | Case No. 3:22-cv-7307-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECUSAL OF A DISTRICT JUDGE PURSUANT TO 28 U.S.C. § 455 AND REASSIGNMENT**<br><br>Hearing<br>Date:     August 31, 2023<br>Time:     2 p.m.<br>Location: Courtroom 10, 19th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF FACTS ................................................................................................ 1

III. LEGAL STANDARD ..................................................................................................... 2

IV. ARGUMENT ................................................................................................................... 3

    A. Defendants have not shown that a reasonable person would question the Court's impartiality under these circumstances ................................................................ 3

    B. Defendants have not shown that the Court is actually biased in favor of Plaintiff's witness or against Defendants ................................................................. 5

    C. Defendants' unwarranted attacks on the credibility of the FTC employee and potential witness are unfounded, inappropriate, and irrelevant to the Court's ruling on the instant Motion ........................................................................................... 6

V. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

### CASES

*Baker v. City of Detroit*, 458 F. Supp. 374 (E.D. Mich. 1978) ................................................................ 4

*Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175 (9th Cir. 2005) ...................................................................... 2

*Davis v. Xerox*, 811 F.2d 1293 (9th Cir. 1987) ...................................................................................... 3

*Hamilton v. Miller*, 477 F.2d 908 (10th Cir. 1973) ................................................................................ 9

*In re Katz*, 476 F. Supp. 2d 572 (W.D. Va. 2007) .................................................................................. 8

*In re Mason*, 916 F.2d 384 (7th Cir. 1990) ......................................................................................... 2, 5

*In re United States*, 666 F.2d 690 (1st Cir. 1981) .................................................................................. 5

*Laxalt v. McClatchy*, 602 F. Supp. 214 (D. Nev. 1985) ..................................................................... 4, 5

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) ....................................................... 2

*Liteky v. United States*, 510 U.S. 540 (1994) ......................................................................................... 3

*Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2023 U.S. Dist. LEXIS 14397
    (W.D.N.Y. Jan. 27, 2023) .................................................................................................................. 8

*Schultz v. Newsweek, Inc.*, 668 F.2d 911 (6th Cir. 1982) ...................................................................... 5

*Sewer Alert Comm. v. Pierce Cnty.*, 791 F.2d 796 (9th Cir. 1986) ........................................................ 4

*United States ex rel. Perry v. Cuyler*, 584 F.2d 644 (3d Cir. 1978), *cert. denied*, 440 U.S. 925
    (1979) ................................................................................................................................................ 6

*United States v. Centennial Builders, Inc.*, 747 F.2d 678 (11th Cir. 1984) ........................................... 9

*United States v. Conforte*, 457 F. Supp. 641 (D. Nev. 1978), *aff'd*, 624 F.2d 869 (9th Cir.
    1980), *cert. denied*, 449 U.S. 1012 (1980) ....................................................................................... 6

*United States v. Holland*, 519 F.3d 909 (9th Cir. 2008) .................................................................... 2, 3

*United States v. Sundrud*, 397 F. Supp. 2d 1230 (C.D. Cal. 2005) ....................................................... 4

*United States v. Walker*, 760 F.2d 144 (7th Cir. 1985) ......................................................................... 9

*W.D.I.A. Corp. v. McGraw-Hill, Inc.*, 34 F. Supp. 2d 612 (S.D. Ohio 1998) ........................................ 9

*Warner v. Global Natural Res. PLC*, 545 F. Supp. 1298 (S.D. Ohio 1982) .......................................... 4

*Wolfe v. Cate*, No. 2:02-cv-01958-JKS, 2011 U.S. Dist. LEXIS 7496 (E.D. Cal. Jan. 19, 2011) . 6

**STATUTES**

28 U.S.C. §§ 455(a)–(b) ................................................................................................. 1, 2, 3, 5

**OTHER AUTHORITIES**

*Guidelines for Professional Conduct*, United States District Court for the Northern District of California, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/ ........... 8

*Araceli Martínez-Olguín Is Confirmed for Federal Judgeship in Northern District of California*, United State Courts for the Ninth Circuit, Feb. 28, 2023, https://cdn.ca9.uscourts.gov/datastore/ce9/2023/Martinez_Olguin_CAN_Confirmed.pdf ........ 4

## I.   INTRODUCTION

Defendants brought the instant Motion for Recusal Pursuant to 28 U.S.C. § 455 and Reassignment (the "Motion") more than a month after being notified that a potential FTC witness had limited interactions with this Court in his capacity as an officer for local bar associations. These organizations provided letters of support and public statements related to Judge Martínez-Olguín's nomination to the bench. Contrary to the assertions made by Defendants, however, courts have repeatedly found that professional relationships, and even prior support for judicial nominations, are not a basis for recusal under 28 U.S.C. § 455(a). Furthermore, in order for recusal to be required pursuant to 28 U.S.C. § 455(b), there must be actual bias instead of the speculative and insinuated bias advanced by Defendants here. For the reasons stated herein, the FTC respectfully requests that the Court deny Defendants' Motion.

## II.   SUMMARY OF FACTS

The FTC filed suit in this District against Defendants on November 18, 2022. (Dkt. #1.) On May 10, 2023, the case was reassigned to Judge Martínez-Olguín. (Dkt. #44.) On May 23, 2023, the FTC notified Defendants' counsel by email of the limited prior contacts between potential FTC witness, Raymond Manzo, and Judge Martínez-Olguín, in the course of Mr. Manzo's leadership roles with local bar associations.[1] (Dkt. #49 at 11–12.) On June 30, 2023, over a month later, Defendants filed the instant Motion. (Dkt. #54.)

As noted in the parties' May 31, 2023, Joint Case Management Conference Statement, Mr. Manzo is an FTC investigator and potential witness at trial for the FTC. (Dkt. #49 at 11.) As part of the FTC's investigation of Defendants, Mr. Manzo conducted a lawful undercover call with Defendant Lewis. (*Id*.) Mr. Manzo was disclosed as a potential witness in the FTC's Rule 26(a) initial disclosures.

In his personal capacity unrelated to his work with the FTC, Mr. Manzo has participated in professional organizations, including the San Francisco La Raza Lawyers Association ("SFLRLA") and the Hispanic National Bar Association ("HNBA"), through which he had

---

[1] Due to the time difference, Defendants' Washington, D.C.-based counsel would have received the information on May 24, 2023.

limited professional interactions with this Court. (*Id.*) In his capacity as President of the SFLRLA, and acting on behalf of the organization, Mr. Manzo submitted a letter of recommendation in support of Judge Martínez-Olguín's nomination to the bench and spoke to the media on at least one occasion in support of the nomination. (*Id.*) As Regional President for the HNBA, Mr. Manzo served on a committee that approved a letter of recommendation from the organization in support of the nomination. (*Id.*) As part of this process, Mr. Manzo interviewed Judge Martínez-Olguín in preparation for her meeting with the HNBA. (*Id.* at 11–12.) As Defendants note, prior to her nomination to the bench, Judge Martínez-Olguín also participated in a March 2021 panel discussion hosted by the SFLRLA. (Def. Mot. at 7.) Mr. Manzo was President of the organization at that time. (*Id.*)

## III. LEGAL STANDARD

As discussed in this section, mere familiarity or contacts with a party or potential witness are insufficient to mandate recusal from a matter pending before the Court. Recusal is required only where continuing to consider the matter would result in either the appearance of a conflict on the part of the Court or an actual conflict of interest.

Under 28 U.S.C. § 455(a), recusal from consideration of a matter is required where a judge's "impartiality might reasonably be questioned." Section 455(a) is intended to "avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988). Courts apply an objective test to determine "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quoting *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (internal quotation marks and citations omitted)). The inquiry should be driven by the facts of the individual case and the Ninth Circuit has instructed that in these circumstances, a "reasonable person" is not "'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.'" *Id.* (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)). The "appearance of partiality" should not be based on "unsubstantiated suggestion of personal bias or prejudice." *Id.* at 913-14.

A judge may be further required to recuse herself under various enumerated

circumstances which demonstrate a close connection to the parties or the matter, or a financial or other interest in the matter. 28 U.S.C. § 455(b). While Section 455(a) addresses the "appearance" of a conflict of interest, whether or not such a conflict actually exists, Section 455(b) "is a per se rule and covers acts that actually create a conflict even if there is no appearance of one." *Davis v. Xerox*, 811 F.2d 1293, 1295 (9th Cir. 1987).

Under 28 U.S.C. § 455(b)(1), it is up to the court to determine if there is an actual conflict. A judge must disqualify herself if she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* The court in *Holland* noted that, in contrast to Section 455(a), the test under Section 455(b) is one of actual bias. 519 F.3d at 914–15. "Bias," according to the Supreme Court, "connote[s] a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is underserved, or because it rests upon knowledge that the subject ought not to possess . . . ." *Liteky v. United States*, 510 U.S. 540, 550 (1994). Applying this subjective test, a judge must "set aside emotion and thoughtfully examine h[er] ability to impartially administer justice without respect to persons. If [s]he feels there is a risk of prejudice, it is incumbent on h[er] to recuse [her]self from the case . . . ." *Holland*, 519 F.3d at 915 (internal quotations and citation omitted). If the court does not find the existence of actual bias, recusal is not necessary.

## IV. ARGUMENT

Defendants move this Court to recuse itself based on limited prior contacts with a potential FTC witness who expressed public support for Judge Martínez-Olguín's nomination, not in his role as an FTC employee, but on behalf of bar associations for which he served as an officer. As discussed below, this past professional connection does not create an appearance of partiality or a conflict of interest, and does not reflect an actual bias on the part of the Court. Accordingly, the Court should deny Defendants' motion.

### A. Defendants have not shown that a reasonable person would question the Court's impartiality under these circumstances.

Courts have repeatedly found that professional relationships, and even prior support for judicial nominations, would not cause a reasonable person "to conclude that the judge's

impartiality might reasonably be questioned." *Holland*, 519 F.3d at 913. Judges necessarily assume their roles after years of legal practice and are permitted to maintain both a personal and professional life within their communities. As the court noted in *Laxalt v. McClatchy*, "A judge is not expected to live in isolation." 602 F. Supp. 214, 217–18 (D. Nev. 1985) (internal citations omitted). It is reasonable to assume that at some point on the bench, both past and current acquaintances will appear before them in the courtroom. *Id.* The mere existence of a prior relationship between the court and a party before it does not automatically require recusal. *See United States v. Sundrud*, 397 F. Supp. 2d 1230, 1233 (C.D. Cal. 2005) (collecting cases and noting that "[g]enerally, judges are not required to recuse when they have a casual relationship with a victim, attorney, witness, or litigant appearing before the court"); *see also Sewer Alert Comm. v. Pierce Cnty.*, 791 F.2d 796, 798 (9th Cir. 1986) ("Friendship with defendants . . . would not lead a reasonable person to conclude that the judge's impartiality might reasonably be questioned."). Indeed, "[e]ven where a litigant or a witness supported the judge when [s]he sought appointment to the judgeship, disqualification is not warranted." *Laxalt*, 602 F. Supp. at 217 (citing *Warner v. Global Natural Res. PLC*, 545 F. Supp. 1298, 1300–02 (S.D. Ohio 1982) and *Baker v. City of Detroit*, 458 F. Supp. 374, 375–77 (E.D. Mich. 1978)).

Moreover, to argue that Mr. Manzo's previous conduct on behalf of his professional organizations has any bearing on the Court's current decision-making vastly misconstrues the judicial appointment process and the role of an Article III judge. As the Ninth Circuit noted in its press release regarding Judge Martínez-Olguín's confirmation, "[F]ederal district court judges are nominated by the president, confirmed by the Senate and serve lifetime appointments upon good behavior." *Araceli Martínez-Olguín Is Confirmed for Federal Judgeship in Northern District of California*, United State Courts for the Ninth Circuit, Feb. 28, 2023, https://cdn.ca9.uscourts.gov/datastore/ce9/2023/Martinez_Olguin_CAN_Confirmed.pdf  (last accessed July 12, 2023). Judicial appointments are handled at the highest levels of government and the effect of any individual recommendation is not publicly known. It would thus be pure speculation to claim, as Defendants do, that in expressing public support on behalf of the SFLRLA and HNBA, Mr. Manzo necessarily provided "extraordinary help to Judge Martínez-

Olguín in obtaining her current position." (Def. Mot. at 3 n.1.) Moreover, bar associations routinely offer statements of support for judicial nominations. There is nothing extraordinary about such conduct, much less anything else that would require that the work of the courts grind to a halt in every instance where a judge was endorsed by a professional organization.

Even if recommendations by bar associations did influence the nomination process, once appointed, judges serve for life and are not beholden to those who may have supported their nominations, or even those who actually nominated and confirmed them to the bench. *See, e.g.*, *Mason*, 916 F.2d at 387 ("Reasonable, well-informed observers of the federal judiciary understand that judges with political friends or supporters regularly cast partisan interest aside and resolve cases on the facts and law. Judges with tenure need not toady, and don't."); *see also Laxalt*, 602 F. Supp. at 217–18 (holding that Section 455(a) did not require recusal even though plaintiff senator had previously interviewed magistrate judge for nomination and was "still in a position to benefit her"). As the First Circuit has noted, even if a judge were to feel some gratitude for public support, "it is beyond contemplation that such gratitude would be of the weight necessary to cause a judge to jettison [her] impartiality and, in open court day after day, to violate [her] deepest professional and ethical commitments as a judge." *See In re United States*, 666 F.2d 690, 696 (1st Cir. 1981); *see also Schultz v. Newsweek, Inc.*, 668 F.2d 911, 919–20 (6th Cir. 1982) (holding that the district judge did not abuse her discretion when declining to recuse herself from a case involving a newspaper defendant that had published an editorial supporting her nomination).

Accordingly, the Court should deny Defendants' motion for recusal and reassignment pursuant to 28 U.S.C. § 455(a).

### B. Defendants have not shown that the Court is actually biased in favor of Plaintiff's witness or against Defendants.

Defendants' arguments regarding the appearance of partiality under Section 455(a) cannot support recusal under Section 455(b). In their analysis of Section 455(b), Defendants improperly revert to analysis of the appearance of partiality under Section 455(a) because Defendants cannot show actual bias. Defendants go so far as to admit that they "do not assert

1 actual bias but move on the appearance of bias." (Def. Mot. at 3 n.1.) Defendants have pointed to no evidence establishing an actual bias held by the Court in favor of or against either party, nor have they provided a declaration in support of their arguments.

As discussed in Section IV.A., courts have repeatedly held that prior social or professional contacts or relationships – and even prior public statements for or against a party – do not always require recusal, and thus could not automatically equate to actual bias. In fact, judges have found that they can personally remain unprejudiced for more extensive and significant interactions than those presented here. *See, e.g.*, *United States ex rel. Perry v. Cuyler*, 584 F.2d 644, 647 (3d Cir. 1978) (holding that recusal is not required from murder prosecution where judge had attended the funeral of the victim, a police officer), *cert. denied*, 440 U.S. 925 (1979); *see also United States v. Conforte*, 457 F. Supp. 641, 658–60 (D. Nev. 1978) (holding that a judge is not required to recuse himself where he had numerous prior social encounters with defendant and had made multiple disparaging comments against defendant prior to the commencement of the criminal proceedings), *aff'd*, 624 F.2d 869 (9th Cir. 1980), *cert. denied*, 449 U.S. 1012 (1980); *see also Sundrud*, 397 F. Supp. 2d at 1237 (holding that recusal was not required where the defendant attacked a court security staff member); *see also Wolfe v. Cate*, No. 2:02-cv-01958-JKS, 2011 U.S. Dist. LEXIS 7496, at *26–27 (E.D. Cal. Jan. 19, 2011) ("[T]he fact that a judge might be personally acquainted, or even friendly, with a witness does not require recusal. These types of extra-judicial contacts have not been enough to overcome the strong presumption that a judge is impartial.").

Because prior professional relationships and statements of public support do not alone establish evidence of actual bias, Defendants have not shown that any such bias or prejudice exists requiring recusal under 28 U.S.C. § 455(b)(1).

**C.     Defendants' unwarranted attacks on the credibility of an FTC employee and potential witness are unfounded, inappropriate, and irrelevant to the Court's ruling on the instant Motion.**

Defendants' personal attacks on the credibility of the FTC's investigator are baseless, inappropriate, and irrelevant to the instant Motion. Throughout their Motion, Defendants

repeatedly reference the potential testimony of Mr. Manzo and cast groundless and improper aspersions as to his character and credibility because of the content of an undercover phone call that is not currently before the Court. For the reasons described herein, the Court should disregard any reference to the content of Mr. Manzo's potential testimony and consider Defendants' motion solely on the basis of whether the Court's limited prior contacts with him require recusal.

First, the purported content of any potential witness's testimony should have no bearing on whether the Court recuses itself. The FTC has disclosed Mr. Manzo as a potential witness at trial and acknowledges that the Court should consider whether its limited professional contacts with Mr. Manzo mandate recusal. Such consideration is appropriate solely because of the facts of the Court's prior contacts with Mr. Manzo and his role as a potential witness, but not because of the nature or content of any potential testimony. Mr. Manzo has not yet testified in a deposition or before the Court. Accordingly, challenges to the admissibility and weight of any potential testimony are not properly before the Court. Defendants' attacks on Mr. Manzo's integrity amount to nothing more than an attempt to taint this Court's impression of him or impeach him before he has even taken the stand. Such tactics are unwarranted and inappropriate, and the Court should disregard them.

This District's Guidelines for Professional Conduct instructs lawyers to treat witnesses and opposing parties with "courtesy and civility." *Guidelines for Professional Conduct*, United States District Court for the Northern District of California, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/ (last accessed July 18, 2023). The Guidelines also admonish that "[a] lawyer should avoid denigrating the intelligence, ethics, morals, integrity, or personal behavior of the opposing party, counsel, or witness, unless such matters are at issue in the proceeding." *Id.* at 7b.

The baseless attacks on Mr. Manzo before he has even testified in this matter represent the types of tactics courts work diligently to discourage. Indeed, while litigants are often given some leeway to argue as they see appropriate when advocating for their clients, courts have found that calling a witness a "liar" in depositions or in court is improper. *See, e.g., Marseet v.*

*Rochester Institute of Technology*, No. 20-CV-7096FPG, 2023 U.S. Dist. LEXIS 14397, at *7 (W.D.N.Y. Jan. 27, 2023) (prohibiting pro se plaintiff from conducting oral depositions after he repeatedly engaged in improper conduct, including, amongst other things, accusing the opposing side of lying and making inappropriate personal attacks against the opposing party and potential witnesses); *In re Katz*, 476 F. Supp. 2d 572, 578 (W.D. Va. 2007) (finding an attorney in contempt after attorney willfully disregarding a court order to refrain from calling government witnesses "liars").

Without a declaration or other evidence, Defendants mischaracterize the nature of a recorded undercover call and baselessly accuse the FTC's investigator of lying at least four times in their Motion, including one attack explicitly accusing him of doing so in a "calculated and premeditated fashion." (Def. Mot. at 3 n.1; 6, lines 7–9; 8, lines 22–24; 9, lines 1–4.) Such unsubstantiated attacks are inconsistent with this District's Guidelines for Professional Conduct, and this Court should refuse to entertain them when considering this Motion.

Moreover, despite directing their attacks at Mr. Manzo, the crux of Defendants' frustration appears to be the fact that Defendant Lewis was recorded in an undercover call conducted as part of the FTC's investigation. There is nothing nefarious or untoward about undercover calls by law enforcement agencies such as the FTC. Undercover investigative techniques are common law enforcement practice and have been repeatedly upheld by courts as a valuable tool for both criminal and civil investigations. *See, e.g.*, *United States v. Walker*, 760 F.2d 144, 147 (7th Cir. 1985) (holding that preventing agents from denying government affiliation "would enable suspected criminals to thwart undercover investigations by merely questioning their associates with respect to their governmental ties"); *Hamilton v. Miller*, 477 F.2d 908, 909 n.1 (10th Cir. 1973) (upholding the use of an undercover tester posing as a renter and noting that "[i]t would be difficult indeed to prove discrimination in housing without this means of gathering evidence"); *W.D.I.A. Corp. v. McGraw-Hill, Inc.*, 34 F. Supp. 2d 612, 628 (S.D. Ohio 1998) (concluding that undercover "[t]esters serve an important role in determining whether a statute intended to safeguard the rights of individuals is properly protecting those rights" and collecting cases demonstrating courts' affirmative approval of the use of "testers").

As the Eleventh Circuit has emphasized, "[u]ndercover work is a legitimate method of discovering violations of civil as well as criminal law." *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 683 (11th Cir. 1984) (rejecting appellants' argument that an IRS agent's undercover contact with appellants was improper and thus required dismissal of a summons). As a result, participating in a lawful undercover call on behalf of a federal law enforcement agency in no way justifies referring to the FTC's investigator as a liar or otherwise attacking his credibility or character.

**V.   CONCLUSION**

For the reasons stated above, the FTC respectfully requests that the Court deny Defendants' Motion for Recusal Pursuant to 28 U.S.C. § 455 and Reassignment.

Dated: July 21, 2023                                   Respectfully Submitted,


/s/ *Michael A. Naranjo*
ABDIEL T. LEWIS
EVAN ROSE
MICHAEL A. NARANJO
Federal Trade Commission
Western Region San Francisco
90 7th St., Suite 14-300
San Francisco, CA 94103
Tel.: (415) 848-5100

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, I electronically filed the foregoing Opposition to Defendants' Motion for Recusal of a District Judge Pursuant to 28 U.S.C. § 455 and Reassignment using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Michael A. Naranjo*
MICHAEL A. NARANJO