ABDIEL T. LEWIS (Cal. Bar No. 339339)
EVAN ROSE (Cal. Bar No. 253478)
MICHAEL A. NARANJO (Cal. Bar No. 221449)
SAMANTHA BENNETT (NY Bar No. 5132063)
Federal Trade Commission
Western Region San Francisco
90 7th St., Suite 14-300
San Francisco, CA 94103
alewis4@ftc.gov, erose@ftc.gov,
mnaranjo@ftc.gov, sbennett@ftc.gov
Tel.: (415) 848-5100

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br>    Plaintiff,<br><br>        v.<br><br>PRECISION PATIENT OUTCOMES, INC.,<br>    a corporation; and<br><br>MARGRETT PRIEST LEWIS,<br>    individually and as CEO of Precision Patient<br>    Outcomes, Inc.,<br><br>Defendants. | Case No.: 4:22-cv-7307-HSG<br><br><br>**STIPULATED ORDER FOR<br>PERMANENT INJUNCTION AND<br>OTHER RELIEF** |

Plaintiff, Federal Trade Commission ("Commission" or "FTC"), filed its First Amended

Complaint for Permanent Injunction, Monetary Relief, Civil Penalty Judgment, and Other Relief

("Complaint"), for permanent injunction, monetary relief, civil penalty judgment, and other relief

in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. §§ 53(b) and 57b, and the COVID-19 Consumer Protection Act, Public Law

116-260, 134 Stat. 1182, Title XIV, Section 1401 ("COVID-19 Act"). The Commission and

Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Other

Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.        This Court has jurisdiction over this matter.

2.        The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the COVID-19 Act in connection with the labeling, advertising, marketing, distribution, and sale of products they claimed treated, prevented, or mitigated COVID-19.

3.        Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.        Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.        Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.        "**Covered Product**" means any Drug, Food, or Dietary Supplement including the products Defendants have marketed as COVID Resist and VIRUS Resist. Covered Product does not include Devices.

B.        "**Defendants**" means the Individual Defendant and Corporate Defendant, individually, collectively, or in any combination.

　　　　1.        "**Corporate Defendant**" means Precision Patient Outcomes, Inc. and its successors and assigns.

　　　　2.        "**Individual Defendant**" means Margrett Priest Lewis.

C.        "**Device**" means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is (1) recognized in the official National Formulary, or the United States

Pharmacopeia, or any supplement to them; (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in humans or other animals; or (3) intended to affect the structure or any function of the body of humans or other animals; and which does not achieve any of its principal intended purposes through chemical action within or on the body of humans or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

D.     "**Dietary Supplement**" means (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb, or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

E.     "**Drug**" means (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include Devices or their components, parts, or accessories.

F.     "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (e.g., inactive binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients are unlikely to impede or inhibit in the effectiveness of the ingredients in the Essentially Equivalent Product.

G.     "**FDA**" means the United States Food and Drug Administration.

H.     "**Food**" means (1) any article used for food or drink for human or other animals; (2) chewing gum; and (3) any article used for components of any such article.

## ORDER

## I.  BAN AGAINST COVID-19 PREVENTION AND TREATMENT CLAIMS

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, are permanently restrained and enjoined from making any representation that such product prevents or reduces the likelihood of infection with, or community transmission of, the SARS-CoV-2 virus; reduces the severity or duration of COVID-19; or otherwise cures, mitigates, or treats COVID-19, unless the FDA has specifically approved the representation.

## II.  PROHIBITED REPRESENTATIONS: REGARDING HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION

IT IS FURTHER ORDERED that Defendants, and Defendants' agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, or sale of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, other than representations covered under the Section of this Order entitled Ban Against COVID-19 Prevention or Treatment Claims, that such product cures, mitigates, or treats any disease unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true. For purposes of this Section, "competent and reliable scientific evidence" means human clinical testing of the Covered Product or of an Essentially Equivalent Product that is sufficient in quality and quantity, based

on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be (1) randomized, double-blind, and placebo-controlled; and (2) be conducted by researchers qualified by training and experience to conduct such testing. In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Test or Studies" must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III.  PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS

IT IS FURTHER ORDERED that Defendants, and Defendants' agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, or sale of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, other than representations covered under the Sections of this Order entitled Ban Against COVID-19 Prevention or Treatment Claims and Prohibited Representations: Regarding Health-Related Claims Requiring Human Clinical Testing for Substantiation, about the health benefits, performance, efficacy, safety, or side effects of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, "competent and reliable scientific evidence" means tests, analyses, research, or studies that (1) have been conducted and evaluated in an objective manner

by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true. In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section of this Order entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission or Plaintiff. Defendants will have the burden of proving that a product satisfies the definition of an Essentially Equivalent Product.

## IV.  PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

IT IS FURTHER ORDERED that, with regard to any human clinical test or study ("Test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants must secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the Test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the Test, and drafts of such documents reviewed by the Test sponsor or any other person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all Test participants, including any participants who did not complete the Test, and all communications with any participants relating to the Test; all raw data collected from participants enrolled in the Test, including any participants who did not complete the Test; source documents for such data; any data dictionaries; and any case report forms;

D.      All documents referring or relating to any statistical analysis of any Test data,

including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any Test data; and

      E.     All documents referring or relating to the sponsorship of the Test, including all communications and contracts between any sponsor and the Test's researchers.

      Provided, however, the preceding preservation requirements do not apply to a Reliably Reported Test, unless the Test was conducted, controlled, or sponsored, in whole or in part by (1) Defendants; (2) Defendants' officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with Defendants; (4) any person or entity affiliated with or acting on behalf of Defendants; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

      For purposes of this Section, "Reliably Reported Test" means a report of the Test has been published in a peer-reviewed journal, and such published report provides sufficient information about the Test for experts in the relevant field to assess the reliability of the results.

      For any Test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendant's size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from and about the participants.

## V.  PROHIBITED MISREPRESENTATIONS REGARDING TESTS, STUDIES, OR OTHER RESEARCH

      IT IS FURTHER ORDERED that Defendants, and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, in any

manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A.      That any Covered Product is scientifically or clinically proven to treat, prevent, mitigate, or cure COVID-19 or any disease or condition;

B.      That the individual ingredients of any Covered Products are scientifically or clinically proven to treat, prevent, mitigate, or cure COVID-19 or any disease or condition;

C.      That the performance or benefits of any Covered Product are scientifically or clinically proven or otherwise established; or

D.      The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## VI.  NOTICE TO CUSTOMERS

IT IS FURTHER ORDERED that Defendants, within 45 days after the entry of this Order, must notify all customers, if any, who purchased COVID Resist or VIRUS Resist on or after May 1, 2021, through the entry of this Order, by:

A.      Publishing on Defendants' websites, including ppolab.com, and Defendants' active social media pages, for all such websites and social media pages that are being used or have been used to market COVID Resist, VIRUS Resist, or other Covered Products, a notice as shown in Attachment A. The notices must remain published for 180 days. For the purposes of this Section, "active social media pages" means all of Defendants' social media pages that are active at any point during the 180 days that the notice must be published; and

B.      To the extent that Defendants have in their possession, custody, or control the customer's mailing address or email address, mailing and/or emailing each customer a notice as shown in Attachment A:

1.      The heading of the notice and the subject line for any email must read "COVID Resist/VIRUS Resist Court Settlement of FTC Case" and the email must be sent to each recipient individually from an address with the www.ppolab.com domain.

2.      The Precision Patient Outcomes name and return address, for any mailing, must appear on the front of the envelope, the customer's name and address must be

printed on the front of the envelope or be visible through a window in the envelope, and the words "COVID Resist/VIRUS Resist Court Settlement of FTC Case" must be printed in easily noticed text near the customer's name and address.

3.    The notice must not include any other materials, attachments, or messages about the Defendants, or otherwise concern Defendants' goods or services.

## VII.  NOTICE TO RESELLERS

IT IS FURTHER ORDERED that within 30 days of the entry of this Order, Defendants must notify all retailers or resellers by sending each by first-class mail, postage paid and return receipt requested, or by courier service with signature proof of delivery, the notification letter attached as Attachment B. Defendants must include a copy of this Order, but no other document or enclosure.

## VIII.  ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of

receipt of this Order.

## IX.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, Defendants must submit a compliance report, sworn under penalty of perjury:

1.    Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of the Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.    Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 5 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has

any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

      2.    Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

      C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

      D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

      E.    Report and certify under penalty of perjury on the notification program required under the Section of this Order entitled "Notice to Customers" as follows:

      1.    Defendants must submit a report within 90 days after the entry of this Order summarizing Defendants' compliance to date, including the total number of eligible customers identified and notified.

      2.    If a representative of the Commission requests any information regarding the program, including any of the underlying customer data, Defendants must submit it within 10 days of the request.

      3.    Failure to provide required notices or any requested information will be treated as a continuing failure to obey this Order.

F.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Precision Patient Outcomes, Inc., et al.

## X.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 5 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant and Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all consumer complaints concerning the subject matter of the Order and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

## XI.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce

documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that Defendants, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XII.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


**SO ORDERED this 15th day of  February, 2024.**

*Haywood S. Gill Jr.*

HON. HAYWOOD S. GILLIAM, JR.
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

Date: 02/14/2024

ABDIEL T. LEWIS, Attorney
EVAN ROSE, Attorney
MICHAEL A. NARANJO, Attorney
SAMANTHA BENNETT, Attorney
Federal Trade Commission
Western Region San Francisco
90 7th Street, Suite 14-300
San Francisco, California 94103
alewis4@ftc.gov, erose@ftc.gov,
mnaranjo@ftc.gov, sbennett@ftc.gov
(415) 848-5100

**FOR DEFENDANTS:**

Date: 12/14/2023

JOHN J. VECCHIONE, Esq.
KARA M. ROLLINS, Esq.
KATHERINE "CASEY" NORMAN, Esq.
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
john.vecchione@ncla.legal, kara.rollins@ncla.legal, casey.norman@ncla.legal
(202) 869-5210
COUNSEL for Precision Patient Outcomes, Inc., and Margrett Priest Lewis

**DEFENDANTS: Precision Patient Outcomes, Inc., and Margrett Priest Lewis**

Date: 12/13/23

MARGRETT PRIEST LEWIS,
INDIVIDUALLY AND AS AN OFFICER OF
PRECISION PATIENT OUTCOMES, INC.

CASE NO. 4:22-CV-7307-HSG
[PROPOSED] STIP. ORDER FOR PERM. INJ.                                                14

**ATTACHMENT A**

Website and Social Media Notice

The Federal Trade Commission (FTC), the nation's consumer protection agency, has sued us for allegedly deceptively advertising that COVID Resist and VIRUS Resist can prevent or treat COVID-19. According to the FTC:

- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will reduce the chances of contracting COVID-19.
- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will prevent you from contracting COVID-19.
- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will treat COVID-19 or its symptoms.

To settle the lawsuit, we have agreed to not make these claims about COVID Resist or VIRUS Resist in the future.

Please visit ftc.gov/[URL] to learn more about this lawsuit. Learn how to spot and avoid false and unproven COVID-19 product claims at ftc.gov/coronavirus.

Margrett Priest Lewis
CEO
Precision Patient Outcomes, Inc.

Mail and Email Notice

**Subject:** COVID Resist/VIRUS Resist Court Settlement of FTC Case

Dear [Name of Consumer]:

Because our records show that you bought the dietary supplement COVID Resist or VIRUS Resist, we're writing to let you know that the Federal Trade Commission (FTC), the nation's consumer protection agency, has sued us for allegedly deceptively advertising that COVID Resist and VIRUS Resist can prevent or treat COVID-19. According to the FTC:

- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will reduce the chances of contracting COVID-19.
- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will prevent you from contracting COVID-19.
- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will treat COVID-19 or its symptoms.

To settle the lawsuit, we have agreed to not make these claims about COVID Resist or VIRUS Resist in the future.

Please visit ftc.gov/[URL] to learn more about this lawsuit. Learn how to spot and avoid false and unproven COVID-19 product claims at ftc.gov/coronavirus.


Sincerely,


_____
Margrett Priest Lewis
CEO
Precision Patient Outcomes, Inc.

**ATTACHMENT B**

&lt;Date&gt;
&lt;Addressee&gt;

**Subject:** COVID Resist/VIRUS Resist Court Settlement of FTC Case


Dear Precision Patient Outcomes, Inc. Retailer:

The Federal Trade Commission (FTC), the nation's consumer protection agency, has sued us for allegedly deceptively advertising that COVID Resist and VIRUS Resist can prevent or treat COVID-19. According to the FTC:

- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will reduce the chances of contracting COVID-19.
- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will prevent consumers from contracting COVID-19.
- There is no competent and reliable scientific evidence that COVID Resist or VIRUS Resist will treat COVID-19 or its symptoms.

You should remove any point-of-sale displays, posters, or other materials on display that include any of the allegedly deceptive claims.

For more information about this lawsuit, visit ftc.gov/[URL]. Please contact me if you have any questions at [contact information].

You and your customers can also learn how to spot and avoid false and unproven COVID-19 product claims at ftc.gov/coronavirus.

Thank you for your business and I greatly appreciate your cooperation in this matter.


Sincerely,


_____
Margrett Priest Lewis
CEO
Precision Patient Outcomes, Inc.